# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE HOSPITAL ASSOCIATION, TAKOMA REGIONAL HOSPITAL, and DELTA MEDICAL CENTER, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION No. _____ |
| SYLVIA MATTHEWS BURWELL, in her official capacity as Secretary of the United States Department of Health and Human Services, | ) ) ) ) ) | |
| ANDREW SLAVITT, in his official capacity as Acting Administrator, Centers for Medicare and Medicaid Services, | ) ) ) ) ) | |
| and | ) ) | |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Tennessee Hospital Association ("THA") and Plaintiff hospitals, Takoma Regional Hospital ("Takoma"), and Delta Medical Center ("Delta") (collectively "Plaintiff Hospitals") (together with THA, "Plaintiffs") seek declaratory and injunctive relief against Defendants Sylvia Burwell, Andrew Slavitt, and the Centers for Medicare and Medicaid Services ("CMS") for violations of the Medicaid Act and the Administrative Procedure Act ("APA"). In support thereof, Plaintiffs state as follows.

## INTRODUCTION

1.      Plaintiff THA's hospital members, which include the Plaintiff Hospitals, treat patients who are eligible to receive benefits from the federal Medicaid program, the medical

4820-1479-9678 v1
2822102-000004 12/15/2016

assistance program established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq*. (the "Medicaid Act"). Congress established the Disproportionate Share Hospital ("DSH") program under the Medicaid Act to help relieve the financial burden on certain hospitals that treat a disproportionate share of Medicaid and uninsured patients. *See* 42 U.S.C. § 1396r-4. Under TennCare, Tennessee's Medicaid waiver program by which Medicaid funds are administered in Tennessee, Plaintiff Hospitals and many of Plaintiff THA's other members qualify to receive payments under the DSH program.

2.     The DSH program helps reimburse disproportionate-share hospitals ("DSHs") for the treatment they provide to Medicaid and uninsured patients through payment adjustments. 42 U.S.C. § 1396r-4(g)(1)(A).  By statute, these payment adjustments may not exceed: (1) the costs of services to individuals eligible for Medicaid, net of payments under the Medicaid Act (hereinafter the "Medicaid Shortfall"); plus (2) the costs of services to individuals who have no health insurance or other third-party coverage, net of payments by or on behalf of those uninsured patients. *Id*. The product of this statutory equation is known as a DSH's hospital-specific DSH payment limit. Only the first part of this statutory equation -- the calculation of the Medicaid Shortfall -- is at issue in this case.

3.     The Medicaid Act expressly provides that, to calculate a DSH hospital's Medicaid Shortfall as to Medicaid patients, only Medicaid payments are to be subtracted from the DSH hospital's costs. 42 U.S.C. § 1396r-4(g)(1)(A).

4.     CMS's current regulations and its regulations applicable for federal fiscal year 2012 ("FY2012") similarly specify that only Medicaid payments are to be considered in the Medicaid Shortfall calculation. 42 C.F.R. § 447.299(c)(16).

4820-1479-9678 v1
2822102-000004 12/15/2016

5. Consistent with the Medicaid Act and 42 C.F.R. § 447.299(c)(16), the CMS-approved TennCare waivers in place from October 5, 2007 through December 16, 2016, state:

> When determining hospital-specific DSH limits and DSH payments, the state must take into account all Medicaid payments under the Medicaid state plan and demonstration projects including amounts paid to hospitals through the GME, EAH, Meharry Medical College, UHC, PHSP, and CAH Pools, as well as any payments by or on behalf of individuals with no source of third party coverage.

This same language is in three different waivers – October 5, 2007 - June 30, 2010; July 1, 2010 - June 30, 2013; and the current waiver, which began on July 1, 2013. and has been temporarily extended to December 16, 2016. See Exhibit A, pages 96-97 of the current TennCare waiver, which contain the text quoted above. The TennCare waiver in effect in 2012 specifically directed TennCare to calculate DSH limits and payments by utilizing, as to payments, only Medicaid payments and any payments by or on behalf of individuals with no source of third party coverage.

6. Without notice-and-comment rulemaking under the Administrative Procedures Act ("APA"), and without requiring an amendment of the TennCare waiver in accordance with the Medicaid Act and its regulations, CMS instituted and began enforcing a so-called "policy clarification" to the regulations promulgated in 42 C.F.R. § 447.299. Though its origins are unclear, this "policy clarification" appeared to manifest itself most directly in or about early 2010 in a document responding to frequently asked questions ("FAQ") called, "Additional Information on the DSH Reporting and Audit Requirements" posted on Defendant CMS's website. A true and accurate copy of this document, drawn from the CMS website, is attached to this complaint as Exhibit B hereto. The "policy" was set forth in responses to FAQ Nos. 33 and 34, found on page 18 of Exhibit B.

4820-1479-9678 v1
2822102-000004 12/15/2016

7.      FAQ Nos. 33 and 34 indicated that DSHs must include in the calculation of their Medicaid Shortfall non-Medicaid payments such as private health insurance payments and Medicare payments, contrary to the plain language of 42 U.S.C. § 1396r-4(g)(1)(A) and 42 C.F.R. § 447.299(c)(16).

8.      Because 42 U.S.C. § 1396r-4(g(1)(A) and 42 C.F.R. § 447.299(c)(16) unambiguously require only Medicaid payments to be contained in the Medicaid Shortfall calculation as to Medicaid patients, the policy clarifications set forth in FAQ Nos. 33 & 34 constitute substantive amendments to the Medicaid statute and regulations. These substantive amendments were not authorized by Congress, and were not promulgated using notice-and-comment rulemaking under the APA.

9.      The United States District Court for the District of Columbia (Sullivan, J.) has preliminarily enjoined the Defendants "from enforcing, applying, or implementing FAQ No. 33" in *Texas Children's Hospital and Seattle Children's Hospital v. Sylvia M. Burwell, Marilyn Tavenner and Centers for Medicare and Medicaid Services*, 76 F. Supp. 3d 224, 247 (D.D.C. 2014). In that case, the district court found that the plaintiffs had shown a likelihood of success on the merits of their claim that the policy referenced in FAQ No. 33 relating to the use of private health insurance payments in calculating a hospital's Medicaid shortfall made "a substantive change to the formula for calculating a hospital's DSH limit," constituted final agency action, and had not been promulgated using the notice-and-comment provisions of the APA. *Id.* at 241.

10.     On March 11, 2016, the United States District Court for the District of New Hampshire entered a preliminary injunction against these Defendants, enjoining them from enforcing, applying, or implementing the policies referenced in FAQ Nos. 33 and 34, pending

4

further orders of the Court. *New Hampshire Hospital Association, et al. v. Sylvia Matthews Burwell, et al,* 2016 WL 1048023, at *17. The New Hampshire court's legal analysis was similar to that set forth in the *Texas Children's Hospital v. Burwell* case, *supra*, but extended the injunctive relief to cover FAQ 34 as well as FAQ 33.

11.     Despite these unambiguous federal district court orders, the Defendants continue to apply the policy referenced in FAQ Nos. 33 and 34 relating to the inclusion of private health insurance payments in the calculation of a DSH's Medicaid Shortfall.

12.     The TennCare Bureau (the "Bureau") has informed Plaintiffs that CMS's "DSH audit guidance", which includes FAQ Nos. 33 and 34, requires the Bureau to "recoup" millions of dollars of DSH funds lawfully made in State Fiscal Year ("SFY") 2012 to many of THA's members qualifying for DSH payments, including the Plaintiff Hospitals. Unless restrained by court order, CMS will force the TennCare Bureau to compel this recoupment by January 5, 2017 as to FY2012 DSH payments. If this recoupment is permitted to occur, it will adversely impact many of THA's members, including the Plaintiff Hospitals.

13.     Application of the policies contained in FAQ Nos. 33 and 34 will also reduce, by recouping millions of dollars, the amount of DSH funding that many of THA's members who qualified for DSH funds received in 2013, 2014, 2015, and 2016. This unjustified loss of significant additional funding will compound the irreparable harm that Plaintiff Hospitals and their patient populations will face if FAQ Nos. 33 and 34 are permitted to be applied by CMS to Tennessee hospitals, or if the new draft rule referenced in this Complaint is fully promulgated, especially if permitted to be applied retroactively.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, and 5 U.S.C. §§

5

704-706, as this action presents a case and controversy under the Medicaid Act, the APA, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

15.     Venue lies in this district under 28 U.S.C. § 1391(e)(1)(B) in that a substantial part of the events giving rise to the claims set forth in this Complaint occurred in this district. THA and Plaintiff Hospitals are all Tennessee corporations located in Tennessee. Venue also lies in this district under 5 U.S.C. § 703 because there is no special statutory procedure for appeal of the recoupment demands referred to above and this court is a court of competent jurisdiction.

## PARTIES

16.     Plaintiff THA is a non-profit Tennessee corporation with a principal place of business located at 5201 Virginia Way, Brentwood, Tennessee. The THA is dedicated to providing leadership through advocacy, education, and information in support of its member hospitals and health care delivery systems. The THA has been at the forefront of advocating on behalf of its members for Medicaid reimbursement that is consistent with the Medicaid Act, its regulations, the TennCare waiver and state law, including issues related to DSH funding. Many of THA member hospitals qualify as DSHs under the TennCare waiver. Defendants' illegal actions, requiring the miscalculation of the hospital-specific DSH payment limit for the THA's DSH-qualified members, will force recoupment from many of those DSH-qualified THA members including Plaintiff Hospitals of statutorily-authorized DSH payments totaling millions of dollars this year and for years that follow 2012.

17.     Takoma Regional hospital is an acute care hospital located at 401 Takoma Street, Greeneville, Tennessee.  It is a THA member and a recipient of DSH and other TennCare payments; it received such payments in 2012.

6

18.     Delta Medical Center is an acute care hospital located at 3000 Getwell Road, Memphis, Tennessee.  It is a THA member and a recipient of DSH and other TennCare payments; it received such payments in 2012.

19.     Defendant Sylvia Burwell is the Secretary of the United States Department of Health and Human Services. Defendant Burwell, by and through her designees at CMS, undertook the illegal and unauthorized actions challenged in this case and has withheld the administrative action Plaintiffs have requested to be taken. Defendant Burwell is sued solely in her official capacity.

20.     Defendant Andrew Slavitt is the Acting Administrator of CMS. CMS is the agency that administers the Medicaid program and the DSH program. Defendant Slavitt is sued solely in his official capacity.

21.     Defendant CMS is the federal agency to which Defendant Burwell has delegated the authority pursuant to the Social Security Act, 42 U.S.C. §§ 1396a(13)(A)(iv), 1396r-4(a)(1)(B), to administer the Medicaid and DSH programs.

## FEDERAL STATUTORY AND REGULATORY FRAMEWORK

22.     "Medicaid is a cooperative federal-state program that provides medical care to needy individuals." *Douglas v. Independent Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204, 1208 (2012).

23.     The program "is funded jointly through federal and state funds." *Consejo de Salud de la Comunidad de la Playa De Ponce, Inc., CDT v. Lorenzo Gonzalez-Feliciano*, 695 F.3d 83, 87 (1st Cir. 2012).

24.     "States are not obligated to participate in Medicaid, but must rigidly comply with several federally-imposed requirements if they opt to do so." *Id.*

4820-1479-9678 v1
2822102-000004 12/15/2016

25.     One of these requirements is that states "take into account (in a manner consistent with section 1396r-4 of this title) the situation of hospitals which serve a disproportionate number of low-income patients with special needs" when setting hospital reimbursement rates. 42 U.S.C. § 1396a(a)(13)(A)(iv).

26.     This statute created "payment adjustment[s]" to hospital rates for qualifying hospitals. 42 U.S.C. § 1396r-4(c). These payment adjustments are available to hospitals that treat a disproportionate share of Medicaid patients. 42 U.S.C. § 1396r-4(b), and are known as "DSH" payments.

27.     Under the Medicaid Act, a DSH payment may not exceed:

[T]he costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A). This payment cap is known as the hospital-specific DSH payment limit.

28.     42 U.S.C. § 1396r-4(g)(1)(A) does not mention or refer to private insurance payments or Medicare payments, or call for the deduction of such payments in calculating the amount of DSH payment limit for any DSH hospital.

29.     To ensure that the hospital-specific DSH payment limit has been calculated correctly for each DSH, each state must provide an annual report and audit of its DSH program to CMS. 42 U.S.C. § 1396r-4(j). This annual report must include:

A.     An identification of each disproportionate share hospital that received a payment adjustment under this section for the preceding fiscal year and the amount of the payment adjustment made to such hospital for the preceding fiscal year.

B.     Such other information as the Secretary determines necessary to ensure the appropriateness of the payment adjustments made under this section for the preceding fiscal year.

8

*Id.*

30.     The Secretary previously promulgated regulations interpreting this reporting requirement at 42 C.F.R. § 447.299.

31.     Those regulations require state annual reports to "present a complete, accurate, and full disclosure of all of their DSH programs and expenditures." 42 C.F.R. § 447.299(a).

32.     They further require states to submit information "for each DSH hospital to which the State made a DSH payment." 42 C.F.R. § 447.299(c).

33.     One piece of information each DSH hospital must submit for inclusion in the state annual report is its "total annual uncompensated care costs." The regulatory formula to determine such costs is as follows:

> The total annual uncompensated care cost equals the total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals and to individuals with no source of third party coverage for the hospital services they receive less the sum of regular Medicaid [fee-for-service] rate payments, Medicaid managed care organization payments, supplemental/enhanced Medicaid payments, uninsured revenues, and Section 1011 payments for inpatient and outpatient hospital services.

42 C.F.R. § 447.299(c)(16). A hospital's "total annual uncompensated costs" is the same as a hospital's "hospital-specific DSH payment limit."

34.     42 C.F.R. § 447.299 defines each type of cost and payment referenced in 42 C.F.R. § 447.299(c)(16). *See* 42 C.F.R. §§ 447.299(c)(6)-(15).

35.     42 C.F.R. § 447.299(c)(16) does not reference private insurance payments or Medicare payments.

36.     To verify the accuracy of these state annual reports, states must employ an independent auditor to audit the state's compliance with the federal DSH program. 42 U.S.C. §1396r-4(j).

4820-1479-9678 v1
2822102-000004 12/15/2016

37.   These independent audits must verify, *inter alia*, that DSH payments made to each hospital comply with the applicable hospital-specific DSH payment limit. 42 U.S.C. §1396r-4(j)(2).

38.   Any overpayments that the audit reveals "must be recouped by the state within one year of their discovery or the federal government may reduce its future contribution." *Texas Children's Hosp.*, 76 F. Supp. 3d at 230 (citing 42 U.S.C. § 1396b(d)(2)(C), (D)).

## CMS GUIDANCE

39.   CMS has developed guidance to help states understand how the hospital-specific DSH payment limit must be calculated. *See* General DSH Audit and Reporting Protocol, CMS-2198-F, filed herewith as Exhibit C.[1]

40.   This document provides the following specific guidance for the auditor with respect to calculating the Medicaid Shortfall:

> To determine the existence of the Medicaid shortfall, Medicaid IP/OP hospital costs (including Medicaid managed care costs) must be measured against Medicaid IP/OP revenue received for such services in the audited State Plan rate year (including regular Medicaid rate payments, add-ons, supplemental and enhanced payments and Medicaid managed care revenues).

*Id*. at 3.

41.   This guidance does not reference private health insurance payments or Medicare payments.

42.   This guidance then provides a step-by-step guide to determine a hospital's hospital-specific DSH payment limit. *Id*. at 5-10.

43.   Step 7 of this step-by-step guide specifies the payments that must be taken into account in calculating the Medicaid Shortfall component of the hospital-specific DSH payment

---

[1] This protocol was previously available on the Medicaid.gov website at http://www.medicaid.gov/medicaid-chip-program-information/by-topics/financing-andreimbursement/downloads/general_dsh_audit_reporting_protocol.pdf . It has been removed at some time since August 8, 2015.

10

limit. It specifies in part: "Hospitals report revenues from Medicaid managed care organizations, Medicaid payments from other States (regular payments including add-ons, supplemental and enhanced payments, DSH payments), and other non-State Medicaid payments."

44.    Step 7 does not reference private health insurance payments or Medicare payments.

## THE TENNCARE WAIVER

45.    The State of Tennessee participates in the federal Medicaid program through its TennCare program.  TennCare is a "Section 1115 waiver" program.  A Section 1115 waiver occurs pursuant to 42 U.S.C. § 1315, and requires the Secretary of HHS to waive numerous standard Medicaid requirements.  Tennessee's current Medicaid waiver has been temporarily extended, and HHS has indicated that a new waiver will commence shortly for a new five-year term.

46.    Medicaid's DSH program has been an important part of TennCare's funding stream since 2007.  In 2012, Tennessee was allocated $55.7 million in DSH funds.

47.    In 2012, 71 hospitals in Tennessee received DSH funds.  Takoma received $188,987 in 2012 DSH funds, and Delta received $994,894 in such funds.

48.    In 2012, 58 of the 71 hospitals that received DSH funds (*i.e.*, more than 80% of such hospitals) were members of THA.

49.    The 2012 DSH audit required by CMS has been performed, and was submitted to CMS in December 2015.  CMS requires repayment to TennCare by the hospitals which received excessive DSH funding according to the audit.

50.    On or about December 1, 2016, each of the Plaintiff Hospitals received a letter via email from the TennCare Bureau.  These letters, attached hereto as Collective Exhibit D, inform each Plaintiff Hospital that it must repay the recoupment amount specified to TennCare by

11

January 5, 2017.  Each letter in Collective Exhibit D specifies also that TennCare has no power to alter CMS's "DSH program audit guidance" on how the DSH recoupment amounts are determined.  Page 3 of each letter in collective Exhibit D contains the following statement by TennCare:

> Please understand that the informal reconsideration phase and the appeal process are opportunities to review the audit findings and assure they are accurate in accordance with CMS guidance.  While you may question Myers and Stauffer's application of CMS DSH audit guidance to ensure the guidance was followed appropriately, you may not address broader issues concerning the appropriateness of CMS DSH program audit guidance and regulations.  Those types of questions or challenges must be made to CMS directly.

(*Id.* (emphasis added))

51.     Barring the injunctive relief sought in this action, TennCare will be required by CMS pursuant to FAQs 33 and 34 to "recoup" DSH "overpayments" specified by the 2012 audit from the hospitals which received them.  In such "recoupments", Takoma, and Delta will be required to repay in recoupment to TennCare the amounts of 2012 DSH funds specified in Para. 49 above:  Takoma will be required to repay $188,987, and Delta will be required to repay $994,894.  (*See* Coll. Ex. D.)

52.     The most recent publicly available state reports on these hospitals, the 2015 Joint Annual Reports, demonstrate that the forced repayment of these funds will impose financial hardships on the Plaintiff Hospitals if Defendants are not restrained by the injunctive relief specified herein.  In the 2015 fiscal year, these two hospitals suffered major financial losses: Takoma reported that its expenses exceeded its revenues by $1,464,643 and Delta reported that its expenses exceeded its revenues by $1,2169,059.  Both Delta and Takoma have continued to operate at a loss in 2016.

53.     If CMS had not applied FAQ 33 and 34 to Takoma and Delta, they could retain the all of the DSH funds they received in 2012 and avoid all recoupment payments.

4820-1479-9678 v1
2822102-000004 12/15/2016

54.     If TennCare fails to recoup the 2012 DSH "overpayments" defined by the audit, CMS will withhold from TennCare's future DSH payments the amount of 2012 overpayments not recouped by TennCare.  Thus, TennCare has no effective option of refusing to recoup these DSH funds from the plaintiff hospitals and others unless the Plaintiffs obtain the relief sought in this Complaint.

55.     Absent the injunctive relief sought by this complaint, the Plaintiff Hospitals and other similarly situated hospital members of THA will experience financial harm that is certain to occur from the recoupment obligation placed upon them by CMS.  This financial harm arising from recoupment will have significant and immediate negative financial impact on the Plaintiff Hospitals.

56.     Apart from the legal remedies sought in this Complaint, there is no legal remedy by which Delta and Takoma can recover the recouped 2012 DSH payments that will be unjustly and unlawfully recouped from them at the direction and compulsion of CMS.

## THE NEW 2016 CMS DRAFT RULE REGARDING DSH PAYMENTS AND THE TREATMENT OF THIRD-PARTY PAYORS IN CALCULATING UNCOMPENSATED CARE COSTS

57.     On August 15, 2016, CMS published a "Proposed Rule" in the Federal Register, at 81 Fed. Reg. 53980-53985, which purports to enforce by rule (when fully promulgated) its position in current DSH litigation such as *Texas Children's Hospital v. Burwell*, 76 F.3d 224 (D.D.C. 2014).  The Federal Register publication of this proposed rule and its related CMS comments is attached hereto as Exhibit E.

58.     CMS's official position on recoupment of DSH "overpayments" identified by the mandated state audits, as set forth in Exhibit E, and as directed at the Plaintiff Hospitals and in current litigation in other federal courts, is that DSH recipient hospitals must experience the negative financial impact of the inclusion in the calculation of their Medicaid shortfall

13

calculations non-Medicaid payments they receive such as private health insurance payments and Medicare payments. This inclusion not only reduces the amount of DSH funds the Plaintiff Hospitals are entitled to retain, but also is contrary to the plain language of 42 U.S.C. §1396r-4(g)(1)(A).

59.     The proposed new rule set forth in Exhibit E has not yet been promulgated as final rule. The comment period for this draft rule lasted only 30 days, ending on September 14, 2016.

60.     The text of the publication of this draft rule and the related CMS comments demonstrates that CMS does not have current statutory or regulatory authority to carry out its program of recouping DSH payments from hospitals on the basis set forth therein.

61.     Exhibit E, CMS's proposed rule, is in excess of CMS's statutory authority. It violates and exceeds the powers granted to CMS by Congress in 42 U.S.C. § 1396r-4(g)(1)(A), which expressly sets forth the "payments" which form the basis for calculating the Medicaid shortfall.

62.     42 U.S.C. § 1396r-4(g)(1)(A) specifies that a DSH hospital's specific DSH limit must be calculated as follows: the hospital-specific DSH limit is equal to (1) the costs incurred providing hospital services to persons who are eligible for medical assistance under the state plan (in Tennessee's case, under TennCare) net of payments received under the Medicaid Act, except for DSH payments (this amount is known as the "Medicaid Shortfall") plus (2) the costs incurred providing services to individuals who have no health insurance or other third-party coverage, net of payments made by or on behalf of those uninsured patients, except for payments made by a state or local governmental entity.

4820-1479-9678 v1
2822102-000004 12/15/2016

63.     The proposed CMS rule set forth in Exhibit E seeks to add new terms to a statute enacted by Congress without those terms: 42 U.S.C. § 1396r-4(g)(1)(A), whose specific terms are set forth in Paragraph 62 above. The proposed rule seeks to add private health insurance and Medicare payments to the congressionally specified list of payments which can be deducted from the costs incurred in serving Medicaid-eligible and uninsured patients in determining a disproportionate share hospital's own DSH limit. This change increases the amounts that CMS demands to be recouped by TennCare from the Plaintiff Hospitals.

64.     On or about September 14, 2016, the chief operating officer of THA filed a letter, a copy of which is attached hereto as Exhibit F, with CMS in response to the rulemaking notice, Exhibit E hereto. Through this letter, THA opposes the promulgation of the rule proposed in Exhibit E due to the absence of statutory authority for its promulgation as well as the extensive negative impact of this rule on many of THA's members.

65.     CMS does not have the constitutional authority or power to rewrite or alter a statute enacted by Congress.

66.     CMS does not have the statutory power under the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.* to promulgate rules not authorized by Congress.

67.     Under the APA, particularly 5 U.S.C. § 706(2)(a), and its own enabling statute, CMS does not have the power to promulgate the rule as proposed in Exhibit E as a retroactive rule, or a rule with retroactive application.

68.     The Medicaid Act unambiguously sets forth the calculation to be used in determining the Medicaid Shortfall component of the hospital-specific DSH payment limit. 42 U.S.C. § 1396r-4(g)(1)(A).

4820-1479-9678 v1
2822102-000004 12/15/2016

69.     The Medicaid Act expressly provides that only "payments under this subchapter" are to be subtracted from the total costs of furnishing hospital services to individuals who are eligible for medical assistance under the State Plan.  *Id.*  "[T]his subchapter" refers to the Medicaid Act.  *See id.*

70.     The policies referenced in FAQ Nos. 33 and 34 regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of the hospital-specific DSH payment limit are contrary to the plain language of 42 U.S.C. §1396r-4(g)(1)(A), which makes no mention of including private health insurance or Medicare payments in that calculation.

71.     In promulgating and enforcing the policies referenced in FAQ Nos. 33 and 34, the Defendants acted in excess of their statutory jurisdiction and their statutory authority, and short of their statutory right, under the Medicaid Act.

72.     The policies referenced in FAQ Nos. 33 and 34 should therefore be declared unlawful and CMS should be restrained by injunction from promulgating as a final rule the draft rule in Exhibit E hereto.

## CLAIMS FOR RELIEF

## COUNT I - Violation of 5 U.S.C. § 706(2)(C)

73.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 72.

74.     The Medicaid Act unambiguously sets forth the calculation to be used in determining the Medicaid Shortfall component of the hospital-specific DSH payment limit. 42 U.S.C. § 1396r-4(g)(1)(A).

75.     The Medicaid Act expressly provides that only "payments under this subchapter" are to be subtracted from the total costs of furnishing hospital services to individuals who are

16

eligible for medical assistance under the State Plan. *Id*. "[T]his subchapter" refers to the Medicaid Act. *See id.*

76. The policies referenced in FAQ Nos. 33 and 34 regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of the hospital-specific DSH payment limit are contrary to the plain language of 42 U.S.C. §1396r-4(g)(1)(A), which makes no mention of including private health insurance or Medicare payments in that calculation.

77. Section 706(2)(C) of the APA requires a reviewing court to "hold unlawful and set aside" agency action "in excess of statutory jurisdiction, authority, . . . or short of statutory right." 5 U.S.C. § 706(2)(C).

78. In promulgating and enforcing the policies referenced in FAQ Nos. 33 and 34, the Defendants acted in excess of their statutory jurisdiction, their statutory authority, and short of statutory right under the Medicaid Act.

79. The policies referenced in FAQ Nos. 33 and 34 are therefore unlawful and should be set aside under 5 U.S.C. § 706(2)(C).

**COUNT II - Violation of 5 U.S.C. § 706(2)(A) and (D)**

80. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 79.

81. In 2008, after notice-and-comment rulemaking, Defendant CMS duly adopted regulations implementing the DSH program audit and reporting provisions of the Medicaid Act 42 U.S.C. § 1396r-4 in 42 C.F.R. Parts 447 and 455. The existing 2008 regulations are unambiguous. They expressly provide the methodology for calculating the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit as follows: "the total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals

17

. . . less the sum of regular Medicaid FFS rate payments, Medicaid managed care organization payments, supplemental/enhanced Medicaid payments, . . ."  42 U.S.C. § 447.299(c)(16).

82.     Despite the existence of these unambiguous regulations, Defendant CMS, without notice or opportunity for comment, issued the policies referenced in FAQ Nos. 33 and 34, which require the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit.

83.     The policies referenced in FAQ Nos. 33 and 34 amend the unambiguous substantive language of 42 U.S.C. § 447.299(c)(16) by adding private health insurance payments and Medicare payments to be deducted from costs in the calculation of the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit.

84.     The policies referenced in FAQ Nos. 33 and 34 constitute "final agency action for which there is no other adequate remedy."  5 U.S.C. § 704.  The application of these unlawful policies to the hospital Plaintiffs and other DSH hospitals in Tennessee should be restrained by injunctive relief from this court.

85.     Defendants are enforcing the policies referenced in FAQ Nos. 33 and 34 by, among other things, requiring independent auditors to follow them in auditing states' compliance with the DSH program and requiring states other than New Hampshire, Washington, and Texas to recoup any overpayments those policies create.

86.     Section 706(2)(A) of the APA proscribes agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Section 706(2)(D) of the APA proscribes agency action that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

4820-1479-9678 v1
2822102-000004 12/15/2016

87. The policies referenced in FAQ Nos. 33 and 34 regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of a DSH's hospital-specific DSH payment limit have the force and effect of law. As such, they are legislative rules that substantively amend the existing federal regulations without following the APA's notice-and-comment procedures. *See* 5 U.S.C. §§ 553(b)-(d).

88. Thus, the policies referenced in FAQ Nos.33 and 34 are arbitrary, capricious, an abuse of discretion and not in accordance with law, and they constitute agency action taken without observance of procedure required by law. They should therefore be vacated pursuant to 5 U.S.C. § 706(2)(A) and (D).

## COUNT III

**Plaintiffs are entitled to a Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 declaring that CMS lacks statutory authority to promulgate the rule set forth in Exhibit E.**

89. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 88.

90. Section 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), proscribes agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."

91. Section 706(2)(C) of the APA, 5 U.S.C. § 706(2)(C), mandates that "the reviewing court shall . . . (2) hold unlawful and set aside agency action, <u>findings</u>, and <u>conclusions</u> found to be -- . . . (c) in excess of statutory jurisdiction, authority, or limitations or short of statutory right; . . ." (Emphasis added.)

92. As Exhibit E to this Complaint indicates, on August 15, 2016, CMS published a proposed rule on the issues set forth in this Complaint at 81 Fed. Reg. 53980.

4820-1479-9678 v1
2822102-000004 12/15/2016

93.     At 81 Fed. Reg. 53984, p. 5 of Exhibit E, Defendants set forth the following findings or conclusions:

> We are proposing at § 447.299 to clarify the definition of "Total cost of care for Medicaid IP/OP services" to specify that the total annual costs of inpatient hospital and outpatient (IP/OP) services must account for all third party payments, including, but not limited to payments by Medicare and private insurance.
>
> We are aware of at least one court that has questioned whether it is a permissible interpretation of the statute to take third party payments into account when calculating the uncompensated care costs of treating Medicaid patients. The court reasoned that because Congress had expressly stated that costs must be net of Medicaid payments, it was unreasonable to interpret the statute as allowing other payments, not specifically mentioned, to be taken into account. At this time, we respectfully disagree. We believe that our interpretation--that all third party payments should be taken into account--better reflects the real economic burden of hospitals that treat a disproportionate share of low-income patients, and accordingly, better facilitates the Congressional directive of section 1923 of the Act in general and the hospital-specific limit in particular. Additionally, we believe that the statutory language indicating that costs are "as determined by the Secretary" gives us the discretion to take Medicare and other third party payments into account when determining a hospital's costs for the purpose of calculating Medicaid DSH payments. Nevertheless, in light of the court's opinion, we request comments on this issue.

94.     In the text from Exhibit E quoted above, Defendants find and conclude that CMS has the power to disregard the express statutory language of 42 U.S.C. § 1396r-4(g)(1) that limits the payments that can be deducted from Medicaid costs to determine a hospital's Medicaid shortfall to "payments under this subchapter . . .".  Thus, by law only Medicaid payments can be deducted from Medicaid costs to determine a hospital's Medicaid shortfall for DSH purposes.

95.     As a matter of law, CMS lacks statutory authority to promulgate the rule set forth in Exhibit E.  Thus, pursuant to 28 U.S.C. §§ 2201 and 2202, the court should declare unlawful and set aside the contents of Exhibit E, and restrain CMS from promulgating the draft rule in Exhibit E as a final rule.

4820-1479-9678 v1
2822102-000004 12/15/2016

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor, and:

A. Declare that any and all HHS or CMS policies that require inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 and 34, are in excess of the Defendants' statutory jurisdiction or authority, or are short of Defendants' statutory authorization, and therefore violate the APA;

B. Declare that any and all HHS or CMS policies that require inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 and 34, are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and therefore violate the APA;

C. Declare that any and all HHS or CMS policies that require inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 and 34, have been imposed as a rule without observance of procedure required by law and therefore violate the APA;

D. Preliminarily enjoin the Defendants from requiring that private health insurance and Medicare payments be deducted from costs in the Medicaid Shortfall component of a DSH's uncompensated care calculation (or requiring states to do so);

E. Vacate any and all HHS or CMS policies requiring inclusion of private health insurance and Medicare payments in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including those policies referenced in FAQ Nos. 33 and 34;

F. Permanently enjoin the Defendants from enforcing, applying, or implementing any and all policies requiring the deduction of private health insurance and Medicare payments from costs in the Medicaid Shortfall component of a DSH's uncompensated care calculation, including the policies referenced in FAQ Nos. 33 and 34 (or requiring states to enforce, apply or implement such policies);

G. Pursuant to 28 U.S.C. §§ 2201 and 2202, declare unlawful and restrain Defendants from promulgating as a final rule the proposed rule published by CMS at 81 Fed. Reg. 53980 *et seq.*, and otherwise restrain CMS from promulgating said proposed rule as a final, effective rule.

H. Award Plaintiffs their reasonable attorney's fees and costs pursuant to 28 U.S.C. 2412(d)(1)(A); and

4820-1479-9678 v1
2822102-000004 12/15/2016

I.      Grant such further relief as the Court deems just and necessary.


                              Respectfully submitted,

                              /s/ William H. West
                              William H. West (BPR # 5543)
                              Lea Carol Owen (BPR # 19531)
                              Macy R. Climo (BPR # 35083) (motion for
                              admission to the Middle District pending)


                              **BAKER, DONELSON, BEARMAN,
                              CALDWELL & BERKOWITZ, P.C.**
                              211 Commerce Street, Suite 800
                              Nashville, TN  37201
                              (615) 726-5600
                              bwest@bakerdonelson.com
                              cowen@bakerdonelson.com
                              mclimo@bakerdonelson.com

                              *Counsel for Plaintiffs Tennessee Hospital
                              Association, Takoma Regional Hospital, and
                              Delta Medical Center*

4820-1479-9678 v1
2822102-000004 12/15/2016